**The PEOPLE of the State of Colorado, Complainant,**

v.

**Sheldon Francis GOLDBERG, Attorney–Respondent.**

No. 88SA434.

Supreme Court of Colorado, En Banc.

Feb. 27, 1989.

George S. Meyer, Deputy Disciplinary Counsel, Denver, for complainant.

Theodore A. Borillo, Denver, for attorney-respondent.

ERICKSON, Justice.

This is a disciplinary proceeding against the respondent, Sheldon Francis Goldberg. Respondent entered into a stipulation, agreement, and conditional admission of misconduct with disciplinary counsel and an inquiry panel of the Grievance Committee accepted the stipulation, agreement, and conditional admission of misconduct. The Grievance Committee recommended that the respondent be suspended for ninety days and assessed the costs of these proceedings. We approve the recommendation, and order that the respondent be suspended for ninety days and that he pay the costs of these proceedings.

The respondent was admitted to the bar of this court on April 17, 1963, and is subject to the jurisdiction of this court. C.R.C.P. 241.1(b). The stipulation, agreement, and conditional admission of misconduct was approved by the respondent and his counsel and by disciplinary counsel. The facts set forth in this opinion are taken from the stipulation and were sworn to and verified by the respondent. The Grievance Committee, in approving the stipulation and recommendation for a ninety-day suspension, emphasized that prior to the imposition of discipline in this case, the respondent had received eight letters of admonition.

I.

The complainant, Philip E. Young, retained the respondent to assist him in a dispute over visitation rights and paid a retainer of $500. Shortly thereafter, the visitation issue was resolved by Young and his former wife, and the respondent was advised that Young would not require his services. The respondent advised Young that he would not refund the unused por-

tion of the retainer but that he would allow Young a credit of $425. Thereafter, the respondent was retained in a dissolution of marriage action involving Young and his second wife just before Young had moved to California to accept new employment. The respondent rendered services to Young relating to the dissolution petition, temporary restraining order, temporary support, custody, maintenance, and attorney fees. Thereafter, Young wrote the respondent and advised him that he would not require further service and that he assumed the retainer covered his fees, inasmuch as he had not heard from the respondent for over a month. In response, the respondent moved to withdraw and billed Young $1,227.60 for his services. Young deducted $400 of the unused retainer and sent the respondent $252.10. The respondent continued to bill for an additional $450.50 and on January 13, 1987, filed suit for that amount plus a $300 collection fee and interest in the amount of $47.96, totaling $798.46. Thereafter Young filed a request for investigation with the Grievance Committee.

On January 29, 1987, Young flew to Denver to appear in court on the return date set on the fee lawsuit and expected that the matter would be concluded. When he realized that he would have to return again, he settled the case with the respondent for $400. After the settlement was reached, the respondent added that he expected Young to drop his grievance against him. Young paid the fee and asked that the grievance charges be dismissed.

The respondent's conduct violates C.R.C. P. 241.6 concerning discipline of attorneys and also violates DR 1–102(A)(1) (violation of a disciplinary rule) (ABA Model Rule 8.4(a)) and DR 1–102(A)(5) (engaging in conduct that is prejudicial to the administration of justice) (ABA Model Rule 8.4(d)).

## II.

The complaining witness, John T. Piper, retained the respondent in October 1984, to represent him in a pending dissolution of marriage proceeding. Piper and his wife owned rental properties and held an interest in two promissory notes. Because of disputes over collection of rent and income from the notes, Piper requested that the respondent collect the money and pay the expense on the rental properties from the money collected. At the permanent orders hearing the respondent accounted for the monies he had received and the expenses he had paid. In the accounting the respondent included as income a $240 security deposit made by a tenant which was clearly identified as a security deposit. As a result, Piper had to reimburse the tenant when the tenant vacated the apartment. The error resulted in Mrs. Piper receiving $240 more than she was entitled to receive.

On December 29, 1984, a bookkeeper for the respondent erroneously deposited a rental check for $345 into the respondent's account instead of into his trust account, but the respondent thereafter made up the payment. In the course of the investigation, the respondent stated he always kept a cushion of his own money in the trust account. Thereafter the respondent continued to receive and disburse funds and again overpaid Mrs. Piper in the amount of $243 from his trust account. From June 1985 through December 1985, respondent received five payments on the note belonging to the Pipers totalling $2,004.35. Mr. Piper was entitled to one-half of the amount and to a further payment of $200. Mrs. Piper was paid her share of the money collected, but the respondent never paid Mr. Piper the $1,202.17 that the respondent owed him, although he did later credit the amount against his claim for attorney fees.

The respondent withdrew as counsel for Mr. Piper on July 28, 1986, and was reminded of his responsibility to account to his client by the court. The comingling of the respondent's funds with his trust account and his failure to account to his client violates C.R.C.P. 241.6 concerning discipline of attorneys and also violates the Code of Professional Responsibility, DR 1–102(A)(1) (violation of a disciplinary rule) (ABA Model Rule 8.4(a)), DR 9–102(A) (preserving identity of funds and property of a client) (ABA Model Rule 1.15), DR 9–

102(B)(3) (maintaining complete records of a client's funds and rendering appropriate accounting) (ABA Model Rule 1.15), and DR 9–102(B)(4) (promptly paying client the funds in possession of the lawyer that the client is entitled to receive) (ABA Model Rule 1.15).

### III.

■ The respondent's conduct when considered with his eight prior letters of admonition warrants suspension for ninety days. The ABA Standards for Imposing Lawyer Sanctions, section 9.22(d) (Multiple Offenses), suggests that the respondent's prior offenses coupled with his substantial experience in the practice of law warrant suspension. *People v. Zinn,* 746 P.2d 970 (Colo.1987). The stipulation, agreement, and conditional admission of misconduct was approved by the respondent and his counsel, and the respondent consents to the imposition of a ninety-day suspension. Respondent has demonstrated that he is capable of a wide variety of misconduct. His unprofessional conduct taken alone might not warrant suspension, but the lengthy history of repeated violations requires suspension. *Zinn,* at 971.

Accordingly, the respondent, Sheldon Francis Goldberg, is suspended for a period of ninety days and is ordered to pay the costs of these proceedings in the amount of $277.62 to the Grievance Committee, 600 17th Street, Suite 500–S, Denver, Colorado 80202–5435, within thirty days of the date of this opinion. The respondent shall have thirty days from February 27, 1989, to wind up his affairs before the ninety-day suspension takes effect. C.R.C.P. 241.-21(a).